IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02600-NYW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff, and

RAYMOND P. CLARK,

    Plaintiff-Intervenor,

v.

SFM, LLC d/b/a SPROUTS FARMERS MARKET,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

    Pending before the court is the Joint Motion for Entry of Consent Decree ("Joint Motion" or the "Motion") [Doc. 13, filed October 4, 2021]. This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the Parties [Doc. 6], and the Order of Reference dated September 28, 2021 [Doc. 10]. The court has considered the Joint Motion and the applicable case law. For the following reasons, the Joint Motion is **GRANTED**.

## BACKGROUND

    On September 24, 2021, Plaintiff the Equal Employment Opportunity Commission ("EEOC") filed a Complaint (the "EEOC Complaint") on behalf of two Charging Parties, Kimberly Ziegler and Megan Thomas, who applied for, and were allegedly refused, employment at Defendant SFM, LLC d/b/a/ Sprouts Farmers Market ("Sprouts" or "Defendant"). *See* [Doc. 1]. Specifically, the EEOC alleges that Sprouts denied employment to Mses. Ziegler and Thomas "because of their disability and/or the need to accommodate their disability" and denied them

1

"reasonable accommodation … in the application and hiring process." [*Id*. at 1]. The EEOC brings claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*. [*Id*. at ¶¶ 61–80].

On September 25, 2021, Plaintiff-Intervenor Raymond Clark ("Mr. Clark") filed an Unopposed Motion to Intervene in this action based on a statutory right to intervention pursuant to 42 U.S.C. §§ 12117(a) and 2005e-5(f)(1). [Doc. 3]. This court granted Mr. Clark's motion on October 1, 2021, [Doc. 11], and Mr. Clark's Complaint in Intervention and Jury Trial Demand (the "Clark Complaint") [Doc. 12] was filed the same day. Mr. Clark similarly alleges that Sprouts denied him employment "because of his disability and/or the need to accommodate his disability" and "denied reasonable accommodation to [Mr.] Clark in the application and hiring process." [Doc. 12 at 1–2]. Mr. Clark asserts the same claims under Title I of the ADA as those asserted in the EEOC Complaint. *Compare* [Doc. 12 at 5–7, ¶¶ 1–20] *with* [Doc. 1 at ¶¶ 61–80].

On October 4, 2021, the Parties filed the instant Joint Motion. [Doc. 13]. They attach a fully executed consent decree ("Consent Decree") to the Motion. *See* [Doc. 13-1].

## THE CONSENT DECREE

Pursuant to the Consent Decree, the Parties seek to "resolve[] the claims alleged" in this action as to Kimberly Ziegler, Megan Thomas, and Raymond Clark (collectively, the "Charging Parties"), and the Consent Decree "constitutes a complete resolution of all of the [EEOC's] claims of unlawful employment practices under the [ADA]" arising out of Defendant's alleged failure to hire the Charging Parties due to their respective disabilities. [Doc. 13-1 at ¶ 10]. Defendant is required to pay a total of two-hundred eighty thousand dollars ($280,000) to the Charging Parties, with this amount to be allocated by the EEOC. [*Id*. at ¶¶ 12–16]. Each Charging Party's receipt of the above-stated monetary relief is conditioned upon that individual's executing an agreement

releasing and waiving the individual's right to recover for any claim of disability discrimination or retaliation under the ADA that were, or could have been, asserted against Defendant. [*Id*. at ¶ 13; *see also id*. at 22–24]. Defendant is also required to "expunge from the application files and any company personnel files or records" regarding the Charging Parties "any and all references to" the allegations of discrimination filed against Defendant in this action, Charging Parties' participation in this action, or protected activity under the ADA related to the EEOC's retaliation claim against Defendant. [*Id*. at ¶ 17]. Further, Defendant is required to provide letters of apology to the Charging Parties. [*Id*. at ¶ 18; *see also id*. at 25].

Defendant will be permanently enjoined from engaging in any employment practice which discriminates on the basis of an individual's disability—including denying employment opportunities to individuals with hearing impairments and failing to provide reasonable accommodations to deaf and hearing-impaired job applicants during the hiring process; or engaging in reprisal or retaliation of any person because of such person's engagement in protected activity under the ADA. [*Id*. at ¶¶ 19–20]. Additionally, Defendant, in consultation with an outside consultant, is to conduct a review and, if necessary, a revision, of its ADA policies so that they conform with the law. [*Id*. at ¶¶ 21–22]. Defendant is required to publicly post such policies—as well as a Notice regarding the Consent Decree—at specific stores identified in the Consent Decree, as well as distribute the ADA policies to each new employee at the time of hire. [*Id*. at ¶¶ 23, 29; *see also id*. at 26].

Defendant must develop and implement management evaluations which include compliance with policies and laws prohibiting disability discrimination and retaliation as factors used to evaluate all HR, supervisory, and managerial staff involved in hiring. [*Id*. at ¶ 30]. Likewise, Defendant must adopt and maintain a written policy addressing the reasonable

accommodation process during the hiring process and in the course of employment, to be distributed to all employees as set forth in the Consent Decree. [*Id*. at ¶¶ 25–26]. Defendant is also required, at least annually, to provide ADA equal employment opportunity ("EEO") training to all of its employees at certain stores, with the training to be conducted as set forth in the Consent Decree. [*Id*. at ¶¶ 27–28]. Further, Defendant is required to provide annual reports for each twelve-month period following the entry of the Consent Decree. [*Id*. at ¶¶ 32–33]. The Parties desire that this court retain jurisdiction of this case for purposes of enforcing, if necessary, compliance with the Consent Decree. [*Id*. at ¶ 34]. The duration of the Consent Decree is thirty-six (36) months from that date that it is entered by this court. [*Id*. at ¶ 37]. Each party is responsible for paying its or his own costs and attorney's fees. [*Id*. at ¶ 39].

## LEGAL STANDARD

"A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating." *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528–29 (1986). A consent decree that is entered in federal court "must be directed to protecting federal interests." *Frew ex rel. Frew v. Haskins*, 540 U.S. 431, 437 (2004). In *Firefighters*, the Supreme Court held that a federal consent decree must (1) "spring from and serve to resolve a dispute within the court's subject-matter jurisdiction"; (2) "come within the general scope of the case made by the pleadings"; and (3) "further the objectives of the law upon which the complaint was based." 478 U.S. at 525.

Before entering a consent decree, a district court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest," and that "the decree is fair, adequate, and reasonable." *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). "And, a

4

consent decree must comply with Federal Rule of Civil Procedure 65(d)," which "requires that every order granting injunctive relief must 'state the reasons why it issued,' 'state its terms specifically,' and 'describe in reasonable detail … the act or acts restrained or required.'" *See EEOC v. Gollnick Constr., Inc.*, No. 19-cv-02581-DDD-SKC, 2019 WL 6327715, at *1 (D. Colo. Nov. 26, 2019) (quoting *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) and Fed. R. Civ. P. 65(d)(A)–(C)).

## ANALYSIS

Upon review of the EEOC Complaint [Doc. 1] and the Clark Complaint [Doc. 12] (collectively, the "Complaints") and the Consent Decree [Doc. 13-1] itself, the court finds that there is no evidence to suggest that the Parties' Consent Decree is illegal, a product of collusion, or against the public interest. To the contrary, the Consent Decree is directed to protecting federal interests, insofar as the Consent Decree resolves a dispute within the court's subject-matter jurisdiction, is within the general scope of the case made by the Complaints, and furthers the objectives of the laws upon which the discrimination claims are based. *See EEOC v. RCH Colo., LLC*, No. 15-cv-02170-RM-NYW, 2016 WL 9735737, at *2 (D. Colo. July 5, 2016) (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401 (1977) (Powell, J., dissenting) ("Settlements particularly serve the public interest within the confines of Title VII where there is great emphasis on private settlement and the elimination of unfair practices without litigation.") (quotation, internal quotation, and ellipsis omitted) and *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989) (stating that "public policy weighs in favor of allowing voluntary settlement of Title VII disputes and releases of private rights under the ADEA.")).

Moreover, the Consent Decree is fair, adequate, and reasonable. *See State of Colo.*, 937 F.2d at 509. That the Parties are represented by experienced counsel and agreed upon the terms

5

of the Consent Decree before Defendant filed responsive pleadings to the Complaints suggests that the Parties' bargaining positions were relatively balanced—in short, that the negotiation process was procedurally fair. *See United States v. Weiss*, No. 11-cv-02244-RM-MJW, 2013 WL 5937912, at *2 (D. Colo. Nov. 6, 2013) (quoting *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 86 (1st Cir. 1990)) ("To measure procedural fairness, a court should look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance."). The terms of the Consent Decree are also substantively fair, including the monetary and non-monetary costs imposed against Defendant, as it incorporates "concepts of corrective justice and accountability" for the Parties. *See id*. Additionally, it is adequate that the Consent Decree accomplishes the goals of the Parties to finally and completely resolve their respective disputes. And the Consent Decree is reasonable; as discussed above, it is in the public interest and upholds the objectives of the laws pursuant to which Plaintiffs raise their claims. *See id*. Further, the Consent Decree complies with Federal Rule of Civil Procedure 65(d) as it sufficiently describes the contents of, basis for, and persons bound by the Consent Decree. *See generally* [Doc. 13-1]. Accordingly, the court concludes that the Consent Decree is satisfactory. *See Gollnick Constr.*, 2019 WL 6327715, at *1 (approving a consent decree where the parties were "represented by counsel, nothing in the record suggest[ed] unfairness in the parties' negotiations, and the terms of the proposed consent decree appear[ed] to be fair, reasonable, and consistent with the public interest and the objectives of the ADA and the Civil Rights Act[,] [a]nd, the proposed consent decree complie[d] with Rule 65(d).").

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED THAT**:

(1)     The Joint Motion for Entry of Consent Decree [Doc. 13] is **GRANTED**;

(2)     The court **APPROVES and ADOPTS** the Consent Decree as tendered [Doc. 13-1];

(3)    The Clerk of Court is **DIRECTED** to docket the Consent Decree [Doc. 13-1] separately as an Order of the court; and

(4)    The Clerk of Court is **DIRECTED** to administratively close this case, subject to reopening for good cause, pursuant to D.C.COLO.LCivR 41.2.

DATED:  October 14, 2021                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

7